IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL WHITE, | § | |
| *Plaintiff,* | § | SA-24-CV-01357-FB |
| vs. | § | |
| TRUIST BANK, GEICO COUNTY MUTUAL INSURANCE COMPANY, | § | |
| *Defendants.* | § | |

# REPORT AND RECOMMENDATION AND ORDER
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Geico County Mutual Insurance Company's Motion for Summary Judgment [#13]. Plaintiff filed a response in opposition to the motion [#18], to which Defendant timely filed a reply in support of its motion for summary judgment and raises several evidentiary objections to Plaintiff's declaration attached to his response [#19]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#16]. The undersigned therefore has authority to enter this recommendation and order pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). For the reasons set forth below, the undersigned will recommend that Defendant's motion for summary judgment be granted and dismiss the evidentiary objections to the summary-judgment record as moot.

## I.  Background

Plaintiff Michael White filed this action in state court against Defendants Truist Bank ("Truist") and GEICO County Mutual Insurance Company ("GEICO"), asserting claims for violations of the Fair Credit Reporting Act ("FRCA") and breach of contract against Truist and

1

claims for fraud and breach of contract against GEICO.  Defendants removed the case to this Court on the basis of federal-question and supplemental jurisdiction based on White's FRCA claim against Truist.  GEICO moves for summary judgment on White's state-law breach of contract and fraud claims against it.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123

(5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III. Summary Judgment Record

After construing any disputed facts in favor of non-movant, White, the following facts are established by the parties' summary-judgment evidence. GEICO issued a car insurance policy ("Policy") insuring White's 2017 Hyundai Tucson ("Vehicle") for the policy period from September 12, 2023 through March 12, 2024. (Policy [#14-1], at 2; GEICO Decl. [#14-5], at ¶ 2.) On January 20, 2024, White's Vehicle was stolen from his house. (White Decl. [#18-2], at ¶ 2.) White filed a police report for the Vehicle's theft the following day. *Id.* After the Vehicle was recovered, White submitted a claim to GEICO on or around January 25, 2024, for damage to the Vehicle caused by the theft. (White Decl. [#18-2], at ¶ 2; GEICO Decl. [#14-5], at ¶ 7.) GEICO acknowledged the claim by email to White on January 25, 2024. (GEICO Decl. [#14-5], at ¶ 8.) A GEICO insurance adjuster initially told White that the Vehicle was declared a total loss, but a different adjuster later told him that the Vehicle would be repaired. (White Decl. [#18-2], at ¶ 3.) White then authorized repairs to be performed on his Vehicle. *Id.* After two weeks passed without any communication from the designated repair facility, White learned that the facility had no record of receiving the vehicle and that GEICO had towed the Vehicle to the incorrect lot. *Id.* White then had difficulty reaching GEICO insurance adjusters to discuss the status of his claim and repairs to the Vehicle despite repeated contact attempts. *Id.* ¶ 4.

Months later, White received a notification that his credit score dropped. *Id.* ¶ 5. He then learned that the Vehicle had been reported abandoned and was repossessed. *Id.* White reclaimed ownership of the Vehicle after paying the necessary fees and costs, including towing and storage

fees. *Id.* White again reached out to a GEICO insurance adjuster, who told him the Vehicle had been towed to the wrong repair facility in February 2024 and that GEICO had made a mistake in processing his claim. *Id.* The Vehicle was then towed to a different repair facility and inspected. *Id.* On May 14, 2024, GEICO determined that the Vehicle was a total loss. (*Id.* at ¶ 6; GEICO Decl. [#14-5], at ¶ 10.)

GEICO determined that White's net loss on the Vehicle was $10,820.44, calculating this value by determining its actual cash value before the loss as $11,821.44, less the Policy's $1,001.00 deductible. (GEICO Decl. [#14-5], at ¶ 10.) Of the $10,820.44 in total loss policy benefits paid, the sum of $5,770.28 was paid to Vehicle lienholder Truist Bank to pay off its lien. (GEICO Decl. [#14-5], at ¶ 11.) The remaining balance of the $10,820.44 in total loss policy benefits, equal to $5,050.16, was paid to White by check on or about May 22, 2024. (GEICO Decl. [#14-5], at ¶ 12.) Per the Policy's terms, GEICO also provided rental reimbursement to White for a total of $980, paying $700 under "Comprehensive" coverage and $280.00 as rental reimbursement. (GEICO Decl. [#14-5], at ¶ 9.) White requested that GEICO reimburse him for the towing and storage fees that he incurred but was informed by a GEICO supervisor that the insurance company would not pay for these fees. (White Decl. [#18-2], at ¶ 5.)

The Policy contains the following provisions relevant to GEICO's liability for the processing of White's insurance claim:

> **SECTION III – COVERAGE FOR DAMAGE TO YOUR AUTO**
> **INSURING AGREEMENT**
> 1. We will pay for direct and accidental *loss* to your *covered auto* . . . less any applicable deductible shown in the Declarations. However, we will pay for *loss* caused by *collision* or *comprehensive* only if the Declarations indicate that Collision or Comprehensive Coverage is provided.
>
> **DEFINITIONS**
> The definitions contained in the **DEFINITIONS SECTION** of the policy apply to SECTION III. . . .
> The following special definitions apply: . . .

4

3. **Comprehensive** means **loss** caused other than by **collision** and includes but is not limited to the following causes: . . .
        c. Theft or larceny; . . ..
7. Loss means direct, sudden and accidental loss of or damage to:
        a. The auto, including its equipment; or
        b. Other insured property.

**TRANSPORTATION EXPENSES**

We will pay up to $25 per day to a maximum of $750 for transportation expenses incurred by you. This applies only in the event of the total theft of your covered auto. We will pay only transportation expenses incurred during the period:
1. Beginning 48 hours after the theft; and
2. Ending when your covered auto is returned to use or we pay for its loss. . . .

**LIMIT OF LIABILITY**

1. Our limit of liability for **loss** will be the lesser of the:
        a. **Actual cash value** of the stolen or damaged property;
        b. Prevailing competitive price to repair or replace the property at the time of **loss** . . . and will not include compensation for any **diminution of value** claimed to result from the **loss** . . .
        c. Amount stated in the Declarations of this policy. . . .
Our payment for **loss** will be reduced by any applicable deductible shown in the Declarations.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. . . .

**3. OUR DUTIES**

a. Within 15 days after we receive your written notice of claim, we must:
    1. Acknowledge receipt of the claim. If our acknowledgment of the claim is not in writing, we will keep record of the date, method and content of our acknowledgment.
    2. Begin any investigation of the claim.
    3. Specify the information you must provide in accordance with item 2. COOPERATION above. We may request more information, if during the investigation of the claim such additional information is necessary.
b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:
    1. Within 15 business days; or
    2. Within 30 days if we have reason to believe the loss resulted from arson.
c. If we do not approve payment of your claim or require more time for processing your claim, we must:
    1. Give the reasons for denying your claim, or
    2. Give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after our requesting more time.

> d. In the event of a weather-related catastrophe or major natural disaster, as defined by the Texas Department of Insurance, the claim handling deadlines as stated above are extended for an additional 15 days.

(Policy [#14-1], at 10-12, 25-26.)

## IV. Analysis

GEICO asks the Court to award it summary judgment on White's breach of contract and fraud claims. The Court should grant the motion. Texas law governs White's breach of contract and fraud claims because a federal court exercising supplemental jurisdiction over a statelaw claim must apply the substantive law of the state in which it sits. *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 666 (W.D. Tex. 2017) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989)).

### A.  White has abandoned his fraud claim.

GEICO seeks summary judgment on White's fraud claim. In his response to GEICO's motion for summary judgment, White gave "notice that he intends to non-suit his fraud claim with prejudice." (Resp. [#18], at n.1.) In the Fifth Circuit, the failure to pursue a claim or defense beyond the party's initial pleading may be deemed abandonment or waiver of that claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim when she failed to defend claim in response to motion to dismiss); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived") (internal quotation and citation omitted). Here, White did not address GEICO's arguments related to his fraud claim in his Response to Geico's motion for summary judgment and instead has given explicit notice of his intent to abandon that claim. White has therefore failed to pursue a claim beyond his initial pleading, and his fraud claim should be deemed abandoned. *N. Panola Sch. Dist.*, 461 F.3d at 588 n.1.

**B.     GEICO is entitled to summary judgment on White's breach-of-contract claim.**

White's Original Petition alleges that GEICO breached the Policy by failing to properly handle White's insurance claim and allowing the vehicle to be repossessed by Truist, causing him to suffer damages including a loss of credit reputation. GEICO argues it is entitled to summary judgment because White failed to identify any provision of the Policy that GEICO breached or, alternatively, because White was paid the benefits he was entitled to under the Policy. GEICO further asserts that White's damages, if any, were not caused by a breach of contract by GEICO because White was paid what was owed under the Policy. In his response to GEICO's motion for summary judgment, White argues that GEICO violated a duty of good faith and fair dealing in performing its obligations to investigate White's claims under the Policy.

White is correct that Texas law imposes "a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citation omitted). As GEICO explains in its Reply in support of its motion for summary judgment, however, White did not plead a cause of action based on GEICO's breach of a duty of good faith and fair dealing in his Original Petition. "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* (emphasis in original). "An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties" such as a duty of good faith and fair dealing. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W. 3d 479, 489 (Tex. 2018) (citation omitted). As GEICO points out, White only pleaded fraud and breach-of-contract claims against it.

GEICO is entitled to judgment as a matter of law on White's breach-of-contract claim because White cannot avoid summary judgment on this claim based on an unpleaded cause of action for breach of duty of good faith and fair dealing. *See, e.g., Jacobs v. Tapscott*, No. 3:04-CV-1968-D, 2006 WL 2728827, at *8 (N.D. Tex. Sept. 25, 2006), *aff'd*, 277 F. App'x 483 (5th Cir. 2008) (explaining that plaintiffs were limited to the grounds for relief asserted in their amended complaint and could not present new bases for relief in their response to defendants' summary-judgment motion). In his response to GEICO's motion for summary judgment, White does not dispute that GEICO paid the value of the Vehicle's loss due under the Policy. Nor does White identify any other provision of the Policy that GEICO breached. Instead, he only argues that GEICO breached a duty of good faith and fair dealing imposed by the Policy provision that spells out GEICO's duty to investigate claims. White has therefore failed to establish the existence of a genuine issue for trial on his breach-of-contract claim. *Matsushita*, 475 U.S. at 587.

The District Court should therefore grant GEICO's motion for summary judgment because White has failed to come forth with any evidence creating a genuine issue of material fact on his breach-of-contract claim. Based on this recommendation, the Court need not resolve GEICO's evidentiary objections to White's declaration. The Court will therefore dismiss the objections as moot.

### V.  Conclusion and Recommendation

Having considered the summary judgment motion filed by GEICO, the response and reply thereto, the summary-judgment record, and the governing law, the undersigned **RECOMMENDS** that GEICO Insurance Company's Motion for Summary Judgment [#13] be **GRANTED**.

**IT IS FURTHER ORDERED** that GEICO's evidentiary objections are **DISMISSED AS MOOT**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 12th day of December, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE